USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11 16 06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

          - against -

TING NGAI NG,

          Defendant.

------------------------------------------X

04 Cr. 271-08 (RWS)

SENTENCING OPINION

**Sweet, D.J.,**

On September 15, 2005, defendant Ting Ngai Ng ("Ng") pled guilty to one count of conspiring in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute MDMA (commonly referred to as "Ecstasy") in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C), a Class C felony. For the reasons set forth below, Ng will be sentenced to a term of imprisonment of ten months, to be followed by a three-year term of supervised release. Ng will also be required to pay a mandatory special assessment of $100.

**Prior Proceedings**

On March 23, 2004, a seven-count superseding indictment was filed alleging that Ng and other co-defendants engaged in various offenses relating to the distribution of Ecstacy. Ng was arrested on March 31, 2004, and was released on bail on April 6,

2004, with a condition of home confinement with electronic monitoring.[1] On July 6, 2004, a second superseding indictment was filed with respect to Ng and the other co-defendants.

On September 15, 2005, Ng appeared before this Court and pled guilty to the charged criminal conduct. He is scheduled to be sentenced on November 17, 2006.

## The Sentencing Framework

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 125 S. Ct. 738 (2005) and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

    (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)   the need for the sentence imposed --

        (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[1] The electronic monitoring condition was removed on September 15, 2005.

(B)  to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for --

(A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5)  any pertinent policy statement ... [issued by the Sentencing Commission];

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 111.

## The Defendant

The following description draws on the Pre-Sentence Investigation Report prepared by the Probation Office of the United States District Court for the Southern District of New York on May

3

12, 2006, and revised on October 30, 2006 ("the PSI").  Additional facts regarding Ng's history and characteristics are adopted as set forth in that report.

Ting Ngai Ng was born in Hong Kong in September 1966.  He came to the United States legally in 1981, and is a permanent resident.  Ng's parents and five siblings also live in the United States.  Ng has never been married, but may have a young son, approximately four years of age.  Although Ng attended high school, he did not complete the eleventh grade.  Ng has supported himself and contributed to his parents' household, in which he currently resides, by working in various Chinese and Japanese restaurants in the New York City area.

Ng reports that his drug use and involvement in the instant offense is an aberration which commenced during a brief period of personal difficulty in his life.

**The Offense Conduct**

The specific facts of the underlying conduct are adopted as set forth in the PSI.

Between June 2003 and March 2004, Ng conspired with co-defendants to distribute approximately 200 Ecstacy pills to various individuals.  These transactions all occurred in this district.

4

**The Relevant Statutory Provisions**

The maximum term of imprisonment is twenty years, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846. In addition, a term of at least three years' supervised release is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846.

Ng is eligible for not less than one nor more than five years' probation, pursuant to 18 U.S.C. § 3561(c)(1). Because the offense is a felony, pursuant to 18 U.S.C. § 3563(a)(2), one of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

5

The maximum fine is $1,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846. A special assessment in the amount of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A), upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years as determined by the court.

**The Guidelines**

The March 27, 2006, edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11(a).

The Guideline for violations of 21 U.S.C. § 841(b)(1)(C) is found in U.S.S.G. § 2D1.1. Pursuant to Application Note 10 of U.S.S.G. § 2D1.1, in order to establish the appropriate offense level, the quantity of Ecstacy involved in this offense must be converted into its marijuana equivalent. Based on the PSI and the Government's Pimentel letter dated April 26, 2006, Ng is responsible for conspiring to distribute and possess with the intent to distribute approximately 200 Ecstacy pills, the marijuana equivalent of which is 25 kilograms.[2] According to U.S.S.G. § 2D1.1(a)-

---

[2]  Based on the Drug Quantity Table, one gram of Ecstacy is the equivalent of 500 grams of marijuana. The typical weight of an Ecstacy pill is 250 mgs.

6

(3) and (c)(4), this amount of Ecstacy results in a base offense level of 18.

Based on the PSI and the Government's Pimentel letter, Ng has shown recognition of responsibility for the offense. Pursuant to U.S.S.G. § 3E1.1(a), the offense is therefore reduced two levels. Further, because Ng's timely notification of his intention to plead guilty has allowed the Government to allocate its resources more efficiently, and because the offense level is 16 or greater, the offense level is reduced one additional level, pursuant to U.S.S.G. § 3E1.1(b).

## Role Adjustment

Ng argues that he is entitled to a reduction in the adjusted offense level because he played between a minor and a minimal role in the conspiracy, pursuant to U.S.S.G. § 3B1.2. Specifically, Ng contends that he was a user who only knew his supplier and his supplier's wife, two of his ten co-defendants. According to Ng, the extent of his involvement in what the PSI refers to as a "loosely knit Ecstacy distribution ring" was as a single-transaction purchaser from one of his ten co-defendants. It is the position of the Probation Office, however, that because Ng is only being held responsible for the amount of drugs that he was involved with, a role reduction would not be appropriate here.

7

A defendant has the burden of proving by a preponderance of the evidence that he is entitled to a minor-role adjustment under U.S.S.G. § 3B1.2.  See United States v. Yu, 285 F.3d 192, 200 (2d Cir. 2002); United States v. Castano, 234 F.3d 111, 113 (2d Cir. 2000); United States v. Colon, 220 F.3d 48, 51 (2d Cir. 2000).  As the Second Circuit has explained, a minor-role reduction "will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' . . . as compared to the average participant in such a crime."  United States v. Carpenter, 252 F .3d 230, 234 (2d Cir. 2001) (quoting United States v. Rahman, 189 F.3d 88, 159 (2d Cir. 1999)); accord Yu, 285 F.3d at 200; United States v. Fernandez, 312 F. Supp. 2d 522, 524 (S.D.N.Y. 2004);  United States v. Sanchez, 925 F. Supp. 1004, 1011 (S.D.N.Y. 1996), aff'd, United States v. Chalarca, 95 F.3d 239 (2d Cir. 1996).  The district court's analysis of the defendant's role in criminal activity is, accordingly, "highly fact-specific and depends on the nature of the defendant's relationship to the other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise."  Carpenter, 252 F.3d at 234 (quoting United States v. Shonubi, 998 F.2d 84, 90 (2d Cir. 1993)); accord United States v. Garcia, 920 F.2d 153, 155 (2d Cir. 1990); United States v. Mateo, 229 F. Supp. 2d 201, 206 (S.D.N.Y. 2004); Sanchez, 925 F.Supp. at 1011.

8

This Court finds that Ng has sufficiently demonstrated that he filled a role in the conspiracy that warrants a three level reduction pursuant to U.S.S.G. § 3B1.2.  First, as to the defendant's relationship to other participants, just as in the cases of United States v. Mateo and United States v. Sanchez, no evidence has been provided to this Court to show that Ng was a regular member of any organization or that Ng had any regular or involved relationship with any of his co-defendants in the indicted conspiracy, otherwise referred to as a "loosely knit Ecstacy distribution ring."  Mateo, 299 F. Supp. 2d at 206; Sanchez, 925 F.Supp. at 1012.

Second, as to the defendant's importance to the success of the venture, just as in the cases of United States v. Fernandez and Sanchez, Ng's role was "essentially fungible." Fernandez, 312 F. Supp. 2d at 525; Sanchez, 925 F. Supp. at 1013. This was a single-transaction purchase that does not appear to be important to the "success" of the "loosely knit Ecstacy distribution ring," since there were other co-defendants responsible for the purchase, delivery or distribution of much larger drug quantities; specifically, thousands of Ecstacy pills.

Third, as to the defendant's awareness of the nature and scope of the criminal enterprise, Ng claims not to know the source of the Ecstacy, nor to have any knowledge or understanding of the scope and structure of the conspiracy charged in the

9

indictment, nor to have any knowledge of eight of his ten co-defendants.  See U.S. Sentencing Guidelines Manual § 3B1.2 cmt. n.4; Fernandez, 312 F. Supp. 2d at 525; Mateo, 299 F. Supp. 2d at 206-07; Sanchez, 925 F. Supp. at 1012.

Next, comparing Ng's participation to that of the average participant in such a crime, see U.S. Sentencing Guidelines Manual § 3B1.2 cmt. n.3(A); Carpenter, 252 F.3d at 234; Yu, 285 F.3d at 200; Fernandez, 312 F. Supp. 2d at 524; Sanchez, 925 F. Supp. at  1011, it is difficult to conclude that Ng did not fill a mitigated role in the indicted conspiracy.

Finally, Application Note 3(A) specifically indicates that holding a defendant accountable only for the conduct in which he or she was personally involved does not preclude that defendant from consideration for an adjustment under this Guideline.  Using a drug trafficking conviction as an example, Application Note 3(A) indicates that a defendant who is held accountable "only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline."  Accordingly, the fact that Ng is only being held accountable for conspiring to distribute and possess with intent to distribute that quantity of drugs with which he was personally involved -- 200 Ecstacy pills -- does not preclude him from receiving a role reduction under U.S.S.G. § 3B1.2.

Therefore, this Court finds that the defendant has met his burden of showing that he played a mitigating role in the offense.  Accordingly, in compliance with the Second Circuit's holding in <u>United States v. Jaqmohan</u>, 909 F.2d 61, 63-64 (2d Cir. 1990), this opinion serves as notice that the Court intends to downwardly depart three levels pursuant to U.S.S.G. § 3B1.2.

## Remaining Calculations

Ng has one prior criminal conviction for which he receives one criminal history point pursuant to U.S.S.G. §§ 4A1.1(c) and 4A1.2(e)(2).  Thus, Ng has a Criminal History Category of I.

Based on a total adjusted offense level of 12 and a Criminal History Category of I, the Guidelines range for imprisonment is 10 to 16 months.

The Guidelines range for a term of supervised release is a minimum of three years, as required by statute, pursuant to U.S.S.G. § 5D1.2(c).

Because the applicable Guidelines range is in Zone C of the Sentencing Table, Ng is not eligible for probation, pursuant to U.S.S.G. §§ 5B1.1, application note 2.

11

The Guidelines fine range for the instant offense is from $3,000 to $1,000,000, pursuant to U.S.S.G. § 5E1.2(c)(3)(A) and (c)(4). Subject to the defendant's ability to pay, in imposing a fine pursuant to U.S.S.G. § 5E1.2(d)(7), the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary," as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In particular, § 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while § 3553(a)(2)(A) demands that the penalty "provide just punishment for the of- fense" that simultaneously "afford[s] adequate deterrence to criminal conduct" as required by § 3553(a)(2)(B). Furthermore, pursuant to § 3553(a)(6), the Court is also mindful of "the need

12

to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Having considered all the factors set forth in § 3553(a), it is determined that as an alternative to the minor/- minimal role reduction applied in the instant case, a sentence below the otherwise applicable Guidelines range is also warrant- ed. In particular, considering the history and characteristics of the defendant pursuant to § 3553(a)(1) and the need for the sentence to provide adequate general and specific deterrence pursuant to § 3553(a)(2)(B), a below-Guidelines sentence would be appropriate. Ng has only one prior criminal state conviction for which he is already serving a sentence of five years' probation. Ng has not been incarcerated prior to the instant offense.

**The Sentence**

For the instant offense, Ng is hereby sentenced to a term of imprisonment of ten months, to be followed by a three- year term of supervised release. In addition, Ng is to pay a mandatory special assessment of $100, which shall be due immedi- ately.

As Ng has kept all court appearances, has been in compliance with all terms and conditions of his pretrial release, and is not viewed as a flight risk or a danger to the community,

13

he is deemed a good candidate for voluntary surrender, pursuant to 18 U.S.C. § 1343(a)(2)(B). Ng is therefore directed to report to the Bureau of Prisons no later than January 2, 2007, to commence a ten month term of imprisonment.

Ng is further directed to report to the nearest United States Probation Office within seventy-two hours of release from custody to commence a three-year term of supervised release. It is recommended that Ng be supervised by the district of his residence.

As mandatory conditions of his supervised release, Ng shall: (1) not commit another federal, state or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) refrain from any unlawful use of a controlled substance, submit to one drug testing within fifteen days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer; and (5) cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13) shall be imposed, along with the following special conditions:

    (1) Ng will participate in a program approved by the United States Probation Office, which program may include testing to determine whether he has reverted to using drugs or alcohol. The Court authorizes the

release of available drug treatment evaluations and
reports to the substance abuse treatment provider, as
approved by the Probation Officer.  Ng shall be re-
quired to contribute to the costs of services rendered
(co-payment), in an amount determined by the probation
officer, based on ability to pay or availability of
third-party payment.

(2) Ng shall obey the immigration laws and comply with
the directives of immigration authorities.

(3) Ng shall submit his person, residence, place of
business, vehicle, or any other premises under his
control to a search on the basis that the probation
officer has reasonable belief that contraband or evi-
dence of a violation of the conditions of the release
may be found.  The search must be conducted at a rea-
sonable time and in reasonable manner.  Failure to
submit to a search may be grounds for revocation.  Ng
shall inform any other residents that the premises may
be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18
U.S.C. § 3572(a), it does not appear that the defendant is able
to pay a fine, and the fine in this case shall therefore be
waived.  A special assessment of $100, payable to the United
States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification
at the sentencing hearing set for November 17, 2006.

It is so ordered.

New York, NY
November  /6  , 2006

ROBERT W. SWEET
U.S.D.J.

15